Andrea W. Jeffries (SBN 183408)
ajeffries@jonesday.com
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071
Telephone: +1.213.489.3939

Randall E. Kay (SBN 149369)
rekay@jonesday.com
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA  92121.3134
Telephone: +1.858.314.1200

Lisamarie LoGiudice (*Pro Hac Vice* Forthcoming)
llogiudice@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: +1.212.326.3939

Thomas S. Koglman (*Pro Hac Vice* Forthcoming)
tkoglman@jonesday.com
Maeve P. Dineen (*Pro Hac Vice* Forthcoming)
mdineen@jonesday.com
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114.1190
Telephone: +1.216.586.3939

Attorneys for Plaintiff
AbbVie Inc.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABBVIE INC., a Delaware corporation,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>ADCENTRX THERAPEUTICS INC., a Delaware corporation; DONG JUN (Danny) LEE, an individual; and DOES 1-10,<br><br>　　　　　　　Defendants. | Case No.  **'23 CV 2290 BEN DEB**<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff ABBVIE INC. ("Plaintiff" or "AbbVie"), files this Complaint against Defendants ADCENTRX THERAPEUTICS INC. ("Adcentrx"), DONG JUN (Danny) LEE ("Lee"), and DOES 1-10 as follows.  When used herein, "Defendants" refers collectively to Adcentrx, Lee, and DOES 1-10.

## NATURE OF THE ACTION

1.     This case involves the misappropriation of AbbVie's valuable trade secret and confidential information regarding cancer-fighting drugs, developed after the investment of many millions of dollars and years of research, by AbbVie's former employee, Lee, and his current employer, biotechnology startup Adcentrx.

2.     Lee worked for AbbVie for over 6 years.  During his tenure, Lee was a key scientist on one of AbbVie's anti-cancer research programs, known as the microtubule inhibitor ("MTi") ADC program.  The MTi ADC program involved a particular type of therapeutic known as **a**ntibody **d**rug **c**onjugates ("ADCs"), which are compounds where an anti-cancer "payload" is conjugated to an antibody via a chemical linker, allowing for targeted delivery of the payload directly to cancer cells.  The combination of the anti-cancer payload and the linker is typically referred to as a "linker-drug."

3.     Just a few months after Lee left AbbVie to join Adcentrx, Adcentrx began filing patent applications naming Lee as an inventor that disclosed important and valuable aspects of AbbVie's secret MTi ADC program, including payloads and linker-drugs invented by Lee while at AbbVie that AbbVie had identified as its lead compounds.  Not only that, Adcentrx also prepared an ADC presently in Phase I clinical trials that AbbVie believes to be based on AbbVie's trade secret and confidential information stolen by Lee.

4.     Defendants did not stop at filing patent applications and conducting clinical trials based on intellectual property misappropriated from AbbVie. Defendants have touted AbbVie's trade secrets and confidential information as their

own in written materials and press releases targeted to investors and continue to do so as of the filing of this Complaint.

5.     Defendants' acquisition, disclosure, and use of AbbVie's trade secrets and confidential information has deprived AbbVie of its rightful sole and exclusive ownership and possession of its trade secrets, confidential information, and inventions.  Justice demands that Lee and Adcentrx pay for what they have taken from AbbVie.

## THE PARTIES

6.     AbbVie is a corporation organized and existing under the laws of Delaware with its principal place of business located at 1 North Waukegan Road, North Chicago, Illinois 60064.

7.     Upon information and belief, Defendant and co-conspirator Adcentrx is a corporation organized and existing under the laws of Delaware with its principal place of business at 5580 Morehouse Drive, Suite No. 210, San Diego, California 92121.

8.     Upon information and belief, Defendant and co-conspirator Lee is an individual domiciled in San Diego County, California.

9.     At present, AbbVie is ignorant of the true names and capacities of additional entities and individuals involved in the wrongdoing alleged herein and involved in filing patent applications disclosing AbbVie's trade secrets.  Therefore, AbbVie sues them under the fictitious names DOES 1-10.  Many facts of the wrongdoing and conspiracy described in this Complaint remain unknown to AbbVie and are in the sole possession of Adcentrx and the co-conspirators, and the complete list of wrongdoers and co-conspirators likely extends beyond the co-conspirators identified here.  AbbVie will amend to identify and state applicable claims, as appropriate, against additional entities and individuals as relevant information becomes available through investigation and discovery.

10.     On information and belief, AbbVie alleges that at all relevant times,

COMPLAINT AND DEMAND FOR JURY TRIAL

each and every defendant was the agent, servant, employee, joint venturer, partner, subsidiary, and/or co-conspirator of each other defendant, and that, in performing or omitting to perform the acts alleged here, each was acting individually as well as through and in the foregoing alleged capacity and within the course and scope of such agency, employment, joint venture, partnership, subsidiary, and/or conspiracy, and every defendant ratified and affirmed the acts and omissions of the other defendants.

11.    On information and belief, AbbVie alleges that each defendant, in taking the actions alleged here and/or ratifying the actions alleged here, acted within the course and scope of such agency and, at the same time, for personal financial and individual gain, as well as in the course and scope of such employment, agency, and as an alter ego therein.

12.    Whenever this Complaint refers to any actions of Adcentrx, such allegations shall mean that the directors, officers, managers, employees, or agents of Adcentrx performed or authorized the alleged acts or actively engaged in the management, direction, and control of such entity and were acting within the course and scope of their employment.

13.    In an October 2023 presentation slide deck titled "Adcentrx Company and Technology Overview" (attached hereto as Exhibit A and incorporated herein), Adcentrx refers to Lee as a member of Adcentrx's management team.

14.    On information and belief, after Lee became employed by Adcentrx, Lee became a management team member, employee, and/or agent of Adcentrx, performing authorized acts and/or actively engaging in the management, direction, and control of Adcentrx.

15.    Each of the co-conspirators referenced in this Complaint was an agent, conspirator, aider, or abettor of one or more of the other defendants.

16.    The acts and omissions of each alleged co-conspirator were performed within the course and scope of that agency, conspiracy, aiding, or abetting.

17.    At all relevant times, the entity defendants were each acting with one or

more of the co-conspirators pursuant to a common scheme, course of action, enterprise, or conspiracy.

18.    As used in this Complaint, the term "co-conspirators" refers collectively to all the named Defendants including the Doe defendants.

## **JURISDICTION AND VENUE**

19.    This Court has original jurisdiction over this matter under 28 U.S.C. § 1331 because AbbVie asserts federal claims under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*, and the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201.

20.    The Court has supplemental jurisdiction over AbbVie's state law claims, which form part of the same case or controversy as the federal question claims, pursuant to 28 U.S.C. § 1367(a).

21.    This Court has personal jurisdiction over Adcentrx, which is a corporation organized under the laws of Delaware with its principal place of business in San Diego, California, and engages in regular business in California and this District.

22.    This Court has personal jurisdiction over Lee who is an individual domiciled in San Diego County, California and this District.

23.    Venue in this District is proper under 28 U.S.C. §§ 1391(b), (c), and (d). Adcentrx is deemed to reside in this District pursuant to 28 U.S.C. § 1391(d) because Adcentrx is a corporation that maintains its principal place of business in San Diego, California and engages in regular business in California and this District.

24.    Lee is deemed to reside in this District pursuant to 28 U.S.C. § 1391(c) because Lee is a natural person domiciled in this judicial District.

25.    Venue in this District is also proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims in this Complaint occurred in this District.

**FACTUAL ALLEGATIONS**

**AbbVie and Its Innovative Technology**

26.     AbbVie is a global biopharmaceutical company headquartered in North Chicago, Illinois.   AbbVie was formed as an independent company in 2013, following its separation from Abbott Laboratories.   AbbVie has a rich, 135-year heritage of developing pharmaceuticals and has grown to be one of the largest biomedical companies in the world, providing life-saving products and services to millions of people.   Every year, over 50 million people are treated by AbbVie's products in over 175 countries around the world.

27.     AbbVie maintains state of the art research and development (R&D) and manufacturing facilities in over 20 countries.   AbbVie employs over 50,000 people in over 70 countries and has consistently been recognized as a top company to work for.

28.     For years, conventional chemotherapy treatments have been used to treat cancer, but conventional chemotherapy can damage a patient's healthy cells while attacking cancerous cells.   Unlike conventional chemotherapy, ADCs are targeted medicines that selectively deliver anti-cancer payloads directly to cancer cells.   ADCs comprise a monoclonal antibody that binds to a specific target (antigen) on the surface of a cancer cell, plus an anti-cancer payload which is conjugated to the antibody through a chemical linker.

29.     In 2015, AbbVie began an ADC program that was focused on developing new MTi anti-cancer payloads/linker drugs for use in ADCs.   This ADC program was directed to "next generation" cancer therapies, as it aimed to improve upon clinical stage and FDA approved MTi ADC products such as ADCETRIS®, which were predominantly based on a platform developed by Seattle Genetics ("SeaGen") known as the monomethyl auristatin E ("MMAE") platform.   AbbVie's MTi ADC program thus sought to develop novel payloads and novel linker-drugs to create highly effective novel ADCs.

30.     AbbVie hired Lee in 2015.

31.     Lee was one of the key scientists in AbbVie's MTi ADC program from at least November 2016 through February 2021.  Lee designed and synthesized many payloads and linker-drugs, including those that ultimately became the leads in AbbVie's MTi ADC program.

32.     Lee had access to the full scope of AbbVie's MTi ADC program. Beyond his involvement in the chemistry effort of the program, Lee engaged directly with the biologists who tested the compounds for efficacy and safety.

33.     Lee was in a unique position to know information a competitor would want to know about AbbVie's confidential project.  AbbVie trusted Lee to safeguard the secrecy of this information, which Lee promised to do as a condition of his employment, an obligation as to which Lee was regularly reminded and trained.

**AbbVie's Intellectual Property and Trade Secrets**

34.     In this Complaint, AbbVie identifies certain trade secret and confidential information owned by AbbVie that Lee developed or learned while at AbbVie and improperly disclosed to Adcentrx, including a portion of which Lee and Adcentrx then improperly disclosed in published patent applications, investor presentations, press releases, and elsewhere, publicizing AbbVie's trade secrets and confidential information.

35.     In this Complaint, AbbVie pleads the asserted trade secrets to the extent that the information can be stated in a publicly filed pleading without impacting AbbVie's rights.  Because Defendants improperly published some AbbVie trade secrets in published patent applications, Defendants destroyed the secrecy of those AbbVie trade secrets published by Defendants – putting the information in the public record without AbbVie's authorization.  That itself is a form of misappropriation, but it is not the full extent of the misappropriation or AbbVie's trade secrets associated with AbbVie's MTi ADC program that Defendants have misappropriated.

36.     Prior to Lee's improper disclosure and Adcentrx's improper acquisition

and disclosures, all of AbbVie's MTi ADC-related trade secrets and confidential information were unknown outside of AbbVie.  Indeed, the very existence of AbbVie's MTi ADC program was confidential.

37.    As part of the MTi ADC program, AbbVie designed proprietary payloads, linker-drugs, and ADCs.  While at AbbVie, Lee invented and synthesized certain payloads, linker-drugs, and ADCs that were distinct from those that comprised the SeaGen platform referenced above, as well as from other MMAE-based compounds known in the art.  AbbVie maintained this information as trade secrets and confidential information.

38.    For example, AbbVie designed novel payloads and linker-drugs where the linker is conjugated to the payload via a modified C-terminal of the payload in contrast to the generally known SeaGen based linker-drugs, which conjugate through the N-terminal of the payload.  Further, the linker includes a dipeptide that is devoid of a p-aminobenzyloxycarbamate ("PABC") spacer used in generally known MMAE-based linker drugs, and has a stable attachment group for further conjugation with an antibody.  AbbVie maintained this information as trade secrets and confidential information.

39.    As part of the MTi ADC program, AbbVie also designed processes for synthesizing its proprietary payloads, linkers, linker-drugs, and ADCs, as well as assays for testing key chemical and biological properties of each.  AbbVie maintained these processes and assays as confidential.

40.    AbbVie compiled information, data, and testing regarding key chemical and biological properties, including efficacy, therapeutic index, potency, free drug levels, bystander activity, hydrophilicity, drug-antibody ratio ("DAR"), stability, and tolerability of various compounds that were synthesized in the MTi ADC program.  AbbVie maintained this information, including negative know-how, as trade secrets and confidential information.

**AbbVie's Trade Secrets Are Valuable and AbbVie Protected Their Secrecy**

41.     For biopharmaceutical companies, such as AbbVie, their business success and survival depend on R&D programs to develop innovative products and services.  These programs typically involve years-long iterative processes where many successes and failures build on one another and where new discoveries made along the way result in new programs and new drug development pathways.  In fact, most R&D programs do not result in a commercial product directly, but the intellectual property created during one program often provides the foundation for a new and different program that may result in a commercial product.

42.     The intellectual property created during this process, regardless of whether it directly results in a commercial product, constitutes valuable assets of companies like AbbVie.

43.     If a competitor improperly acquires a company's intellectual property and negative know-how, that provides the competitor with an unfair and unjust advantage in the market because it can avoid expending resources, engaging in a lengthy development process, and contending with the uncertainty of success.  Such improper acquisition by a competitor also deprives the company of the full economic value or potential value of its intellectual property assets.

44.     By misappropriating AbbVie's trade secrets and confidential information, Adcentrx and Lee not only deprived AbbVie of its intellectual property, but also deprived AbbVie of the opportunity to commercialize or have exclusive use of its intellectual property in the appropriate manner and at the appropriate time.

45.     The payloads, linker-drugs, and ADCs synthesized by AbbVie as part of its MTi ADC program, and the results or data obtained as part of the MTi ADC program, have significant economic value in the market for anti-cancer drugs.  These compounds facilitate cancer cell specific treatment that can be used to target a wide variety of cancer types.

46.     AbbVie discovered its payloads, linker-drugs, ADCs and related information, including negative know-how, at great expense.

47.     AbbVie's MTi ADC program involved a significant investment of AbbVie's resources, including both funds and personnel, over a multi-year period. AbbVie spent at least five years and many millions of dollars developing its MTi ADC technology.   These compounds and related information have independent economic value from not being generally known to others who can obtain economic value from the disclosure or use of the information and who could use such information to save significant time and resources in developing ADCs to compete against AbbVie in the market.

48.     AbbVie's trade secrets and confidential information have significant actual and potential economic value in the market for anti-cancer drugs, generally, and in the market for ADCs, specifically.

49.     The worldwide market for ADCs generates billions of dollars in revenue annually, and it is growing.

50.     Research reporting indicates that the ADC market is highly competitive and projected to grow from $9.7 billion in 2023 to $19.8 billion by 2028.  AbbVie's trade secrets are valuable innovations in this market that could potentially generate significant revenue in commercialization.

51.     Lee and Adcentrx recognized this economic value, as evidenced by their pursuit of patents based on AbbVie's trade secret payloads and linker-drugs, and in Adcentrx's decision to advance an MTi ADC to a phase I clinical trial.

52.     Given the amount of experimentation required, where many of the aspects of the technology are put through iterative processes to determine the effects of slight changes and where testing must be done to determine, for example, efficacy and safety, access to AbbVie's trade secrets and confidential information, including negative know-how, would shortcut the immense time and effort otherwise required and which AbbVie expended to develop them.

53.     AbbVie's trade secrets and confidential information from AbbVie's MTi ADC program asserted against Defendants in this case comprise at least AbbVie's proprietary payloads, linker-drugs, ADCs, synthetic processes, testing assays, and information, data, and results, including negative know-how, some of which is described more fully above, which AbbVie maintained as protected trade secrets and confidential information.

54.     All of the employees and managers on AbbVie's technical team, including Lee, were entrusted with AbbVie's trade secrets and other confidential information under obligations of confidentiality.

55.     None of the payloads, linker-drugs, ADCs, synthetic processes, testing assays, information, data, or results, including negative know-how, was published or publicly disclosed by AbbVie, and AbbVie did not file any patent applications relating to its MTi ADC program.  Lee knew that to be the case.

56.     At all times, AbbVie took reasonable measures to protect the secrecy of the payloads, linker-drugs, ADCs, synthetic processes, testing assays, and information, data, and results, including negative know-how.

57.     AbbVie's security measures include, but are not limited to, those alleged herein.

58.     AbbVie maintains stringent security measures to preserve the secrecy of its trade secrets and proprietary information.

59.     These security measures are particularly important in light of the considerable investment AbbVie has made in developing and maintaining its trade secrets.

60.     For example, AbbVie has, and at all times relevant to this matter had, written policies and procedures governing its information technology ("IT") and the security of confidential information, including the trade secrets described above.

61.     AbbVie's policies and procedures relate to computer controls, data access, IT disaster recovery, network security, user setup procedures, password

administration and management, data backup, security audits, security breach investigations, email best practices, and mobile device security.

62.    AbbVie requires employees to adhere to strict rules and policies regarding its confidential information, including that no AbbVie trade secrets, or other confidential or proprietary information, may be disclosed to any unauthorized third party.

63.    Specifically, AbbVie requires all employees, as a condition of employment, to undertake confidentiality agreements that prohibit the disclosure or unauthorized use of AbbVie's trade secrets and other confidential information.

64.    AbbVie also requires all employees to assign to AbbVie any inventions or discoveries made in the course of their employment with AbbVie.

65.    Lee signed a confidentiality agreement that prohibits the disclosure or unauthorized use of AbbVie's trade secrets and other confidential information, and assigned to AbbVie any inventions or discoveries made in the course of his employment with AbbVie.

66.    AbbVie limits access to the trade secrets described above and its other confidential and proprietary information to certain employees and stores its trade secret information electronically in a secure network system.  AbbVie's computers are protected from unauthorized access through the use of individual user names and passwords, and passwords must be changed regularly.  AbbVie's electronic applications require user authentication and also have a session timeout mechanism in place.

67.    AbbVie protects its trade secrets and other confidential information from disclosure in its business dealings with third parties through nondisclosure agreements.

68.    To ensure the security of AbbVie's trade secrets and other proprietary, confidential information, AbbVie has licensed encryption software that monitors

application and data usage, encrypts sensitive data, and enables auditing for compliance with AbbVie's security policies.

69.    Exemplifying AbbVie's security measures, AbbVie employees receive annual training on the company's Code of Business Conduct.

70.    AbbVie employees are also bound by a duty of loyalty to the company; they are obligated to serve only AbbVie during their employment and to act in AbbVie's best interests.

71.    No agent or employee of AbbVie who has been entrusted in the course of employment with valuable AbbVie trade secrets known only to AbbVie, may thereafter utilize this secret knowledge against the interests or to the prejudice of AbbVie.  But this is exactly what Lee has done.

**Defendants' Misappropriation of AbbVie's Intellectual Property**

72.    AbbVie's trade secret and confidential information described above was known and available to Lee in the course of his employment with AbbVie.

73.    On information and belief, Defendants conspired to and have misappropriated AbbVie trade secret and confidential information obtained by Lee.

74.    In April 2021, while he was employed by AbbVie, Lee secretly accepted a position at Adcentrx.  Lee remained employed at AbbVie until June 2021.

75.    Upon his departure in June 2021, Lee immediately joined Adcentrx, a start-up company founded just five months earlier, and disclosed AbbVie's trade secret and confidential information, including negative know-how, to his new employer.

76.    Adcentrx began filing patent applications, naming Lee as an inventor, disclosing AbbVie's trade secrets and confidential information less than four months after Lee joined Adcentrx and less than a year into Adcentrx's overall existence.  This unusually short timeframe is further evidence of Adcentrx's use of AbbVie's trade secret and confidential information.

COMPLAINT AND DEMAND FOR JURY TRIAL

77.     Adcentrx's patent applications make clear that Lee unlawfully took AbbVie's trade secret and confidential information and disclosed it to his new employer, who unlawfully used AbbVie's hard work and know-how, including negative know-how, to jump start and advance its own ADC program.

78.     Adcentrx knew or should have known that the information Lee disclosed to it was AbbVie's trade secret and confidential information that Lee obtained during the course of his employment at AbbVie, and which Adcentrx unlawfully acquired.

79.     On information and belief, Adcentrx induced Lee to use and disclose trade secret and confidential information he obtained during his employment at AbbVie.

80.     Adcentrx named Lee as an inventor on three international patent applications and four U.S. provisional patent applications relating to MTi ADCs: PCT/US2022/048735;     PCT/US2022/048739;     PCT/US2022/053738;     U.S. Provisional Application Serial Nos. 63/275,177; 63/275,403; 63/293,583; and 63/295,476 ("the Disputed Applications").

81.     Adcentrx     filed     International     Patent     Application     number PCT/US2022/048735 on November 2, 2022.  It is titled "Novel Auristatin Analogs and Immunoconjugates Thereof" and lists Lee as an inventor.  This application claims priority to U.S. Provisional Application Serial Nos. 63/275,177, filed November 3, 2021, and 63/295,476, filed December 30, 2021.  PCT/US2022/048735 was published as International Publication Number WO 2023/081230 (attached hereto as Exhibit B and incorporated herein) on May 11, 2023.

82.     Adcentrx disclosed AbbVie's trade secret and confidential information in WO 2023/081230.

83.     For example, a payload invented by Lee while employed at AbbVie was disclosed by Adcentrx in WO 2023/081230 as Compound 20:

Compound 20



84.    Another payload invented by Lee while employed at AbbVie was disclosed by Adcentrx in WO 2023/081230 as Compound 21:

Compound 21



85.    As yet another example, WO 2023/081230 discloses a minor variation of these payloads as Compounds 1 and 14:

Compound 1



Compound 14



86.    WO 2023/081230 describes Compounds 1 and 14 as merely retaining potency in comparison to Compounds 20 and 21, attributing the "unique and unexpected properties" of Compounds 1 and 14 to a structural feature common to Compounds 20 and 21 (i.e., "the ethylene functionality of the P5 moiety").

87.    WO 2023/081230 further discloses the use of Compound 1 as part of a linker-drug in Compound 28 in a manner that directly incorporates AbbVie's trade secret information, including but not limited to conjugating a stable linker to the modified C-terminal of Compound 1.



Compound 28

COMPLAINT AND DEMAND FOR JURY TRIAL

88.    It is apparent that Defendants used AbbVie's trade secret and confidential information, including but not limited to knowledge of the payloads and linker-drugs designed and synthesized as part of AbbVie's MTi ADC program and related confidential information, data, and test results, including negative know-how, to develop the subject matter of WO 2023/081230.

89.    Adcentrx filed International Patent Application number PCT/US2022/048739 on November 2, 2022.  It is titled "Drug Conjugates and Methods of Preparing and Using the Same" and lists Lee as an inventor.  This application claims priority to U.S. Provisional Application Serial No. 63/275,403, filed November 3, 2021.  PCT/US2022/048739 was published as International Publication Number WO 2023/081232 (attached hereto as Exhibit C and incorporated herein) on May 11, 2023.

90.    Adcentrx disclosed AbbVie's trade secret and confidential information in WO 2023/081232.

91.    For example, a compound identical to a payload Lee invented while employed by AbbVie was disclosed by Adcentrx in WO 2023/081232 as INT-24, which is the same payload as Compound 20 in WO 2023/081230:



INT-24

92.    As another example, WO 2023/081232 discloses the use of INT-24 in linker-drug Compounds 12 – 19.  Representative linker-drug Compound 12 is shown below.



Compound 12

93. Compound 12 includes INT-24 in a manner that directly incorporates AbbVie trade secret information, including but not limited to conjugating a stable linker to the modified C-terminal of INT-24.

94. It is apparent that Defendants used AbbVie's trade secret and confidential information, including knowledge of the payloads and linker-drugs designed and synthesized as part of AbbVie's MTi ADC program and related confidential information, data, and test results, including negative know-how, to develop the subject matter of WO 2023/081232.

95. Adcentrx filed International Patent Application number PCT/US2022/053738 on December 21, 2022. It is titled "Novel Auristatin Analogs and Immunoconjugates Thereof" and lists Lee as an inventor. This application claims priority to U.S. Provisional Application Serial No. 63/293,583, filed December 23, 2021. PCT/US2022/053738 was published as International Publication Number WO 2023/122228 (attached hereto as Exhibit D and incorporated herein) on June 29, 2023.

96. Adcentrx disclosed AbbVie's trade secret and confidential information in WO 2023/122228.

97. For example, WO 2023/122228 discloses the same payload as Compound 20 of WO 2023/081230 and INT-24 of WO 2023/081232 discussed above, but with a minor modification indicated by the blue box below, as Compound 2:



98. As another example, WO 2023/122228 discloses the use of Compound 2 as part of a linker-drug in Compound 29 in a manner that directly incorporates

AbbVie's trade secret information, including but not limited to conjugating a stable linker to the modified C-terminal of Compound 2.



Compound 29

99. It is apparent that Defendants used AbbVie's trade secret and confidential information, including knowledge of the payloads and linker-drugs designed and synthesized as part of AbbVie's MTi ADC program, and related confidential information, data, and test results, including negative know-how, to develop the subject matter of WO 2023/122228.

100. On information and belief Defendants disclosed AbbVie's trade secret and confidential information to the U.S. Patent Office on November 3, 2021 in U.S. Provisional Application Serial Nos. 63/275,177, and 63/275,403, on December 23, 2021 in U.S. Provisional Application Serial No. 63/293,583, and on December 30, 2021 in U.S. Provisional Application Serial No. 63/295,476. Thereafter, Defendants disclosed AbbVie trade secrets and confidential information to the world on May 11, 2023 and June 29, 2023, when the PCT Applications were published.

101. AbbVie was first aware of the Disputed Applications no earlier than the publication dates of the Disputed Applications, the earliest of which was in May 2023. AbbVie first knew of or had reason to know of Defendants' misappropriation thereafter.

102. In addition to the unusually fast timeline to patent filing (4 months from when Lee began at Adcentrx), Adcentrx's lead MTi ADC product, ADRX-0706, is already in Phase I clinical trials. On September 27, 2023, Defendants announced the first patient dosed in a Phase I study of ADRX-0706, a little over 2.5 years from Adcentrx's founding.

103.   On information and belief, Defendants used AbbVie's trade secret and confidential information in the design and synthesis of ADRX-0706.

104.   According to Defendants, "[ADRX-0706] is produced using Adcentrx's proprietary i-Conjugation™ technology and novel tubulin inhibitor payload, AP052, to generate an ADC with a drug-antibody ratio of eight (DAR 8)."

105.   On information and belief, Defendants used AbbVie's trade secret and confidential information to design its i-Conjugation™ technology.

106.   On information and belief, Defendants continue to entice investors by touting technology stolen from AbbVie as its own.

107.   For example, Adcentrx disclosed to investors in a non-confidential document that its "[p]roprietary conjugation technology" "address[es] key technical hurdles for ADCs." (Ex. A). Adcentrx describes its alleged proprietary conjugation technology as "i-Conjugation™ (irreversible, stable cysteine conjugation)." *Id.*

108.   Moreover, Adcentrx purports to "address key technical hurdles" with "[i]mproved payloads" and "better linkers leading to a wider therapeutic window." *Id.*

109.   Adcentrx's outward representations mimic problems identified, goals stated, and solutions achieved during the course of AbbVie's MTi ADC program.

110.   Defendants also disclosed to investors that ADRX-0706's "Proprietary AP052 payload" has "high potency with lower toxicity" relative to the SeaGen MMAE platform. *Id.*

111.   On information and belief, Defendants used AbbVie's trade secret and confidential information in designing and synthesizing AP052.

112.   Defendants also disclosed to investors that "[h]omogenous DAR8" is "consistently achieved" for ADRX-0706 and that "Adcentrx's homogenous DAR8 ADCs display hydrophilic shifts compared to SeaGen's vcMMAE DAR4 ADC." These are additional problems identified, goals stated, and solutions achieved during the course of AbbVie's MTi ADC program. *Id.*

113.   On information and belief, Defendants used AbbVie's trade secret and confidential information in designing and synthesizing ADCs, including but not limited to ADRX-0706, in accordance with this description.

114.   According to Defendants, Adcentrx has additional preclinical ADCs in development, including at least (i) ADRX-0405—an oncology-indicated ADC;  (ii) an unspecified "Program 863" ADC; and (iii) multiple unspecified additional oncology-indicated ADCs.

115.   On information and belief, Defendants used AbbVie's trade secret and confidential information from AbbVie's MTi ADC program in the design and synthesis of these additional preclinical ADCs.

116.   On information and belief, the examples described above and herein are merely representative of Lee's and Adcentrx's misappropriation of AbbVie's trade secret and confidential information, and Lee and Adcentrx misappropriated additional AbbVie trade secret and confidential information.  The full extent of misappropriation by Defendants remains unknown at this time.

**Lee Violated His Contractual Obligations To AbbVie**

117.   As a condition of his employment, on February 2, 2015, Lee and AbbVie executed an Employment Agreement.

118.   On information and belief, Defendants conspired to have Lee breach his Employment Agreement and Lee did intentionally violate his contractual obligations to AbbVie by disclosing AbbVie's trade secrets and confidential information to Adcentrx and by improperly purporting to assign to Adcentrx inventions that he had already assigned to AbbVie.

119.   Pursuant to paragraph 3 of the Employment Agreement, Lee agreed that "[a]ll . . . memoranda, notes, records, reports, . . . compounds and other documents, products and materials made or compiled by or made available to [LEE] during the course of employment with ABBVIE . . . are and shall be the property of AbbVie and

shall be delivered to ABBVIE by [LEE] prior to termination of employment with ABBVIE."

120.   Pursuant to paragraph 4 of the Employment Agreement, Lee agreed that "[a]ll discoveries, inventions, improvements . . . , whether or not patentable, copyrightable, or registerable (including all data and records pertaining thereto) which [LEE] may invent, discover, originate, or conceive during the term of employment with ABBVIE or which may arise out of or result from Confidential Information obtained, provided or otherwise acquired, either directly or indirectly, by [LEE] in connection with [LEE'S] employment with ABBVIE, shall be the sole and exclusive property of ABBVIE."

121.   Pursuant to paragraph 4 of the Employment Agreement, Lee further agreed that he "shall promptly and fully disclose each and all such discoveries, inventions, improvements, . . . or innovations to ABBVIE."

122.   Paragraph 2 of the Employment Agreement defined "Confidential Information" as "all discoveries, inventions, improvements and innovations, whether or not patentable or copyrightable, methods, processes, techniques, shop practices, formulae, compounds, compositions, organisms, . . . research data, clinical and pharmacological data, . . . and all other know-how, trade secrets and proprietary information that are in the possession of ABBVIE and that have not been published or disclosed to the general public."

123.   Pursuant to paragraph 5 of the Employment Agreement, Lee "shall, and does hereby, assign to ABBVIE, [LEE'S] entire right, title, and interest to any of the discoveries, inventions, improvements, . . . innovations . . . described in Paragraph 4 of this Agreement and any related U.S. or foreign counterparts, including patents, patent applications, copyrights and registrations."  Lee further agreed that he "shall maintain in confidence any information, including without limitation documents and communications, disclosed to [LEE] after [his] term of employment with ABBVIE in connection with [LEE'S] obligations hereunder."

124.   Pursuant to paragraph 8 of the Employment Agreement, Lee agreed to "use all best efforts to protect the secrecy and confidentiality of Confidential Information.  [LEE] shall not, during the term of employment with ABBVIE or thereafter, use or disclose, or assist in the disclosure to others, directly or indirectly, and Confidential Information, except as required and authorized in the scope of [LEE'S] job responsibilities and in furtherance of ABBVIE'S business."  Lee further acknowledged "that the relationship of [LEE] to ABBVIE with respect to Confidential Information shall be fiduciary in nature."

125.  Pursuant to paragraph 18 of the Employment Agreement, Lee "acknowledge[d] receipt of and agree[d] to comply with the ABBVIE Code of Business Conduct."

126.   On information and belief, Adcentrx conspired with Lee to breach, and Lee did breach, at least the above terms of his Employment Agreement with AbbVie by improperly disclosing AbbVie's trade secrets and confidential information to Adcentrx and the world and by claiming AbbVie's intellectual property as their own.

127.   Pursuant to paragraph 17 of the Employment Agreement, Lee and AbbVie agreed that "[t]his Agreement shall be construed, and its enforceability and the relationship of the parties shall be determined, in all respects under the laws of Illinois, without giving effect to conflict of laws."

**Defendants Adcentrx and Lee Conspired Against AbbVie**

128.   On information and belief, sometime before June 4, 2021, Defendants Adcentrx and Lee knowingly conspired and planned together to misappropriate AbbVie's trade secret and confidential information and for Lee to breach the Employment Agreement as alleged herein for the purpose of taking and using AbbVie's trade secret and confidential information for Defendants' gain.

129.   Each of the Defendants agreed to so conspire and did so conspire in committing the acts alleged herein, and acted in concert with each other, coming to

a mutual understanding to accomplish a common and unlawful plan, and causing damages to AbbVie, all according to proof.

130. As a direct, foreseeable, and proximate result of Lee's breach and Defendants' misappropriation, AbbVie has suffered and continues to suffer from the loss and unauthorized use of its intellectual property and any and all benefits under Lee's Employment Agreement in an amount to be proven at trial, for which AbbVie is entitled to compensation.

131. As a result of said conspiracy, each of the Defendants is rendered responsible as joint tortfeasors for all damages ensuing from the wrongs alleged herein, irrespective of whether or not they were direct actors and regardless of the degree of their personal activity.

## FIRST CAUSE OF ACTION

**Misappropriation of Trade Secrets Under the Defend Trade Secrets Act**

**(18 U.S.C. § 1836, *et seq.*)**

**(Against Adcentrx, Lee and DOES 1-10)**

132. AbbVie incorporates by reference the allegations contained in paragraphs 1 through 131 as though fully set forth herein.

133. AbbVie is the owner of trade secret and confidential information, including AbbVie's compounds, formulations, processes, discoveries, and technologies, that as described above, constitute "trade secrets" within the meaning of 18 U.S.C. § 1839 (3).

134. Such trade secrets are related to products, services, and medical treatments and therapies that are used, sold, shipped and/or ordered in, or intended to be used, sold, shipped, and/or ordered in, interstate and foreign commerce.

135. AbbVie's trade secret information is valuable competitive information.

136. At all relevant times, AbbVie has taken reasonable steps and precautions to limit and restrict others from knowing, readily ascertaining, or using AbbVie's trade secrets and other confidential information, including by limiting access to

sensitive information, requiring employees and contractors to sign agreements prohibiting use and disclosure of such information outside AbbVie, protecting files and information from unauthorized access, restricting access and providing physical security at AbbVie's facilities and storage sites, and requiring the return of sensitive materials upon termination of agreements.

137. A competitor who comes to learn of AbbVie's trade secret or confidential information would receive an unfair competitive advantage that could tangibly harm AbbVie's competitive position in the market, potentially depriving AbbVie of millions of dollars in lost sales.

138. As described above, the trade secret information at issue was developed as part of AbbVie's operation and business.

139. AbbVie's trade secrets and confidential information are critical to its business success, and the protection of AbbVie's trade secrets and confidential information prevented competitors from being able to copy its products and methods.

140. AbbVie's trade secrets and confidential information derive independent economic value from not being generally known to the public nor readily ascertainable through proper means by others who can obtain economic value from their disclosure or use.

141. AbbVie expended considerable time and resources in developing its trade secrets and other confidential information, products, and processes.

142. On information and belief, Defendants Adcentrx and Lee have improperly misappropriated AbbVie's trade secret information.

143. On information and belief, Adcentrx, through the actions of Lee and by inducing the actions of Lee, improperly acquired AbbVie's trade secrets and other confidential information through the conduct alleged above and used such trade secrets and confidential information to unfairly advance the development of Adcentrx's products and technology.

144. Lee improperly disclosed AbbVie's trade secret information to Adcentrx without AbbVie's knowledge or consent.

145. Lee improperly acquired and disclosed AbbVie's trade secret information through improper means, including, but not limited to, promising to abide by the terms of an employment contract and then violating that agreement.

146. On information and belief, Adcentrx knew, reasonably should have known, or was willfully blind to the fact that it improperly acquired AbbVie's trade secret information from Lee.

147. Adcentrx and Lee disclosed, without AbbVie's knowledge or consent, AbbVie's trade secrets by, among other things, publicly disclosing them in patent applications.

148. Defendants' conduct constitutes misappropriation of trade secrets under 35 U.S.C. § 1836.

149. AbbVie has been and continues to be harmed by Defendants' misappropriation of AbbVie's trade secrets.  AbbVie thus seeks compensatory damages and equitable relief.

150. Defendants' actions have caused and will continue to cause AbbVie to suffer severe competitive injury, irreparable harm, and significant damages in an amount to be proven at trial.  As the direct and proximate result of such misappropriation, AbbVie has suffered, among other things, damage within the meaning of 18 U.S.C. § 1836(b)(3)(B)(i) in an amount that is yet unknown.  If Defendants' conduct is allowed to continue unchanged, AbbVie will continue to suffer irreparable injury and significant damages.

151. Because AbbVie's remedy at law is inadequate to compensate for Defendants' misappropriation of AbbVie's trade secret information, AbbVie also seeks equitable relief.

152. AbbVie is entitled to injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A) and seeks appropriate, just injunctive relief to recover and protect

its trade secret and confidential information and to protect its other legitimate business interests.

153.   In addition, Adcentrx has been unjustly enriched as a direct and proximate result of its misappropriation of AbbVie's trade secrets, within the meaning of 18 U.S.C. § 1836(b)(3)(B)(i)(II) in an amount that is yet unknown. Among other things, AbbVie is informed and believes and therefore alleges that Adcentrx was able to raise money to finance its ADC development efforts by virtue of Defendants' misappropriation of AbbVie's trade secret information.

154.   On information and belief, Defendants' misappropriation of trade secrets was willful and malicious within the meaning of 18 U.S.C. § 1836(b)(3)(C), (D).   Accordingly, AbbVie is entitled to recover exemplary damages and its reasonable attorneys' fees.

155.   Pursuant to the Court's inherent powers and pursuant to 18 U.S.C. § 1836(b), AbbVie asks the Court to provide any additional relief appropriate to remedy Defendants' misappropriation of trade secrets, including the assignment to AbbVie of all patent applications or patents purportedly assigned to Adcentrx that disclose, claim, or were derived from any of AbbVie's trade secrets, including assigning to AbbVie any amendments, continuations, and U.S. or foreign counterparts thereto.

## SECOND CAUSE OF ACTION

### Declaratory Judgment

### (28 U.S.C. § 2201)

### (Against Adcentrx, Lee, and DOES 1-10)

156.   AbbVie incorporates by reference the allegations contained in paragraphs 1 through 155 as though fully set forth herein.

157.   There exists an actual, ripe, and justiciable controversy between AbbVie and Defendants regarding each party's rights and interests in connection with the ownership of inventions and pending patent applications that incorporate, disclose,

claim, or use misappropriated AbbVie trade secrets or confidential information as well as any and all related applications that Defendants have filed or will file based on such trade secrets and confidential information.

158.   As described above, Lee invented, discovered, originated, and conceived of certain discoveries, inventions, improvements, and innovations during the term of his employment with AbbVie and which arose out of or resulted from confidential AbbVie information Lee obtained, was provided, or was otherwise acquired by Lee in connection with his employment with AbbVie.

159.   On information and belief, Lee subsequently disclosed these inventions, discoveries, improvements, and innovations to Adcentrx, in violation of his Employment Agreement with AbbVie.  Adcentrx and Lee improperly disclosed these discoveries and inventions in the Disputed Applications:   PCT/US2022/048735; PCT/US2022/048739; PCT/US2022/053738; U.S. Provisional Application Serial Nos. 63/275,177; 63/275,403; 63/293,583; and 63/295,476.

160.   On information and belief, based on common patent practice, Adcentrx may have filed additional pending, unpublished patent applications that also disclose and/or are based on AbbVie's trade secrets, discoveries, inventions, improvements, and innovations.

161.   On information and belief, Adcentrx and Lee also improperly used AbbVie's trade secret and confidential information in Adcentrx's development program including in further inventions, improvements, and discoveries that Adcentrx and Lee disclosed and claimed in the Disputed Applications.

162.   Pursuant to the terms of the contract between AbbVie and Lee described above, AbbVie is the legal and/or equitable owner of inventions and discoveries disclosed in the Disputed Applications.

163.   As a result of the conduct and events described in detail above, AbbVie has legal and/or equitable ownership and/or other property interests in pending patent

applications inconsistent with and superior to any interest claimed by Defendants and without being subject to any license purportedly granted by Adcentrx.

164.   Due to Defendants' misconduct in acquiring, using, and disclosing AbbVie's trade secret and confidential information, as described above, Defendants have forfeited any competing interest in the Disputed Applications.

165.   AbbVie's ownership and related interests include sole or joint legal and equitable ownership of the Disputed Applications and any related patents, patent applications, continuations, and foreign or U.S. counterparts thereof that Defendants have or will file or claim.  Any license to any of these rights purportedly granted by Adcentrx is null and void *ab initio*.  The Court should so declare pursuant to 28 U.S.C. § 2201.

## THIRD CAUSE OF ACTION

### Breach of Contract

### (Inventions Assignment Provisions)

### (Against Lee)

166.   AbbVie incorporates by reference the allegations contained in paragraphs 1 through 165 as though fully set forth herein.

167.   Lee and AbbVie's Employment Agreement is a valid and enforceable agreement.

168.   The assignment provisions in Lee's Employment Agreement with AbbVie are valid and enforceable.

169.   As set forth in the Employment Agreement, AbbVie possesses sole and exclusive ownership, rights, and interests in all discoveries, inventions, improvements, including all data and records pertaining to them, that Lee may have invented, discovered, originated, or conceived during the term of employment with AbbVie or which may arise out of or result from confidential information obtained, provided, or otherwise acquired by Lee in connection with his employment with AbbVie.

170.   The Employment Agreement also required Lee to assign to AbbVie all rights in any such property and that Lee "shall assist AbbVie in obtaining, defending and enforcing its rights."

171.   On information and belief, Lee violated and will continue to violate these provisions because Adcentrx's ADC therapeutics are based at least in part on intellectual property owned by AbbVie, and Lee, in violation of his contractual obligations, purportedly assigned AbbVie's intellectual property to Adcentrx.

172.   As the direct and proximate result of these breaches, AbbVie has suffered and, if Lee's conduct is not stopped, will continue to suffer severe competitive harm, irreparable injury, and significant damages in an amount to be proven at trial.

173.   As the direct and proximate result of these breaches, Lee has improperly obtained benefits, in an amount to be proven at trial, for which AbbVie is entitled to restitution.

174.   On information and belief, if Lee continues to misappropriate and use AbbVie's intellectual property for his own benefit, AbbVie will suffer competitive injury to its significant detriment.

175.   Because AbbVie's remedy at law is inadequate to fully compensate for its harm, AbbVie seeks, in addition to damages, equitable relief to recover its inventions and intellectual property, including assignment of the Disputed Applications, and any and all related patents, patent applications, and continuations thereof, both U.S. and foreign, to protect AbbVie's legitimate business interests.

## FOURTH CAUSE OF ACTION

### Breach of Contract

### (Confidentiality Provisions)

### (Against Lee)

176.   AbbVie incorporates by reference the allegations contained in paragraphs 1 through 175 as though fully set forth herein.

177.   Lee and AbbVie's Employment Agreement is a valid and enforceable agreement.

178.   The confidentiality provisions in Lee's Employment Agreement with AbbVie are valid and enforceable.

179.   The Employment Agreement requires Lee to return property and information provided by and/or belonging to AbbVie at the end of his employment with AbbVie.

180.   The Employment Agreement also prohibits Lee from disclosing or using AbbVie's confidential information for any purpose except for his employment with AbbVie.

181.   After resigning from his employment with AbbVie, Lee violated the Employment Agreement by failing to return AbbVie's property and information and using AbbVie's confidential information and inventions to his and Adcentrx's benefit.

182.   Lee violated the Employment Agreement by improperly using and disclosing AbbVie's trade secret and confidential information to Adcentrx without AbbVie's knowledge or consent.

183.   On information and belief, Adcentrx improperly acquired, used, and disclosed AbbVie's trade secrets, confidential information and inventions, including, but not limited to, AbbVie's compounds, data, and discoveries, as detailed above.

184.   As the direct and proximate result of these breaches, AbbVie has suffered and, if Lee's conduct is not stopped, will continue to suffer severe competitive harm, irreparable injury, and significant damages in an amount to be proven at trial.

185.   As the direct and proximate result of these breaches, Lee has improperly obtained benefits, in an amount to be proven at trial, for which AbbVie is entitled to restitution.

186.   On information and belief, if Lee continues to misappropriate and use AbbVie's intellectual property, AbbVie will suffer competitive injury to its significant detriment.

187.   Because AbbVie's remedy at law is inadequate to fully compensate for its harm, AbbVie seeks, in addition to damages, equitable relief to recover its inventions and intellectual property, including assignment of the Disputed Applications, and any and all related patents, patent applications, and continuations thereof, both U.S. and foreign, to protect AbbVie's legitimate business interests.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff AbbVie prays for judgment against Defendants Adcentrx and Lee as follows:

1.      Judgment in AbbVie's favor against Defendants on all causes of action alleged herein;

2.      Damages according to proof in an amount to be determined at trial;

3.      Exemplary damages in view of the willful and malicious misappropriation of AbbVie's trade secret information in an amount to be determined at trial;

4.      A declaration that AbbVie possesses legal or equitable ownership and interest in the Disputed Applications, and all related patents, patent applications, continuations, and derivatives thereto, inconsistent and superior to any interest asserted by Defendants, including, but not limited to, PCT/US2022/048735; PCT/US2022/048739; PCT/US2022/053738; U.S. Provisional Application Serial Nos. 63/275,177; 63/275,403; 63/293,583; and 63/295,476; and that any license to any of these rights purportedly granted by Adcentrx, Lee, or anyone affiliated with them is null and void *ab initio*.

5.      Injunctive relief, including permanent injunctive relief: (a) requiring Defendants, and any other individuals and entities acting in concert with them, to return all of AbbVie's confidential information; (b) requiring Defendants to disclose

and assign to AbbVie any and all inventions, including all pending patent applications and issued patents, of which AbbVie is the rightful owner or which contain AbbVie's trade secrets or other confidential information; (c) enjoining Defendants from further substantive prosecution of patent applications alleged herein, without AbbVie's consent and control, of which AbbVie is the rightful owner or which contain or are derived from AbbVie's trade secrets or confidential information; (d) requiring Defendants to cooperate with AbbVie in the prosecution of such pending patent applications; and (e) prohibiting Defendants from using AbbVie's trade secrets, confidential information, and inventions without AbbVie's consent.

6.      A declaration that AbbVie possesses the right to prosecute the Disputed Applications, and all related patent patents, applications, continuations, divisionals, continuations-in-part, and thereto;

7.      Restitution of all property, profits, or other benefits wrongfully acquired;

8.      Attorneys' fees and costs incurred by virtue of the dispute;

9.      Pre-judgment and post-judgment interest at the maximum rate allowed by law; and

10.      Such other and further relief as AbbVie may be entitled to or the Court may deem proper.

Dated:  December 13, 2023              Jones Day


                                       By: *s/ Andrea W. Jeffries*
                                           Andrea W. Jeffries

                                           Attorneys for Plaintiff
                                           AbbVie Inc.

COMPLAINT AND DEMAND FOR JURY TRIAL

## **DEMAND FOR JURY TRIAL**

Plaintiff AbbVie Inc. respectfully requests a jury trial in this action on all issues so triable.

Dated:  December 13, 2023                          Jones Day


By: *s/ Andrea W. Jeffries*
    Andrea W. Jeffries

    Attorneys for Plaintiff
    AbbVie Inc.

COMPLAINT AND DEMAND FOR JURY TRIAL